(74 App. Div. 27.)

MARSHALL v. HAYWARD et al., Highway Com'rs.

(Supreme Court, Appellate Division, Second Department.   June 13, 1902.)

MUNICIPAL CORPORATIONS—OFFICERS—EXTRA COMPENSATION—BRIDGES BETWEEN TOWNS.

The corporation attorney of a city rendered certain services in connection with the construction of a bridge over a river which formed the boundary between such city and another town. Const. art. 3, § 28, provides that neither the legislature nor the common councils, nor any board of supervisors shall grant any extra compensation to any public officer. Laws 1890, c. 568, art. 5, provides for the building and repair of bridges; section 134 providing that, where two or more towns shall be liable to make or maintain any bridge, it shall be built and maintained at their joint expense, without reference to town lines, and that the commissioners of highways of such towns may make contracts therefor. Laws 1897, c. 269, provides that, when it is decided to construct a bridge over a stream dividing a city from a town or village, it shall be constructed in accordance with Laws 1890, c. 568, art. 5; the common council being the highway commissioners of the city, and the board of village trustees being the highway commissioners of the village. These acts provide the expenditures which may be made, and for what purposes incurred, but provide for no extra compensation. ·Held, that the highway commissioners in building such a bridge do not act as a joint board for that purpose, but each acts for his own town or city, and neither they nor the corporation counsel, nor any other officer of the city or town, are entitled to extra compensation.

Submission of controversy between William J. Marshall and Edward T. Hayward and others, highway commissioners of the city of Mt. Vernon.   Judgment for defendants

See 73 N. Y. Supp. 592.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Gustav R. Hamburger, for plaintiff.

Frank M. Buck, for defendants.

WOODWARD, J.   The plaintiff is the corporation counsel of the city of Mt. Vernon.   It is conceded that he has rendered the services set forth in the statement of facts, and that they are fairly worth the figure named; but payment is refused on the ground that there is no legal authority for granting to the corporation counsel additional compensation for the services rendered in connection with the construction of a bridge over the Hutchinson river, which forms the boundary between the town of Pelham and the city of Mt. Vernon.   Having in mind that provision of the state constitution which provides that "the legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor" (section 28, art. 3, Const.), as an index to the policy of the state, we are to examine the statutory provisions in reference to the construction of bridges where two municipalities are interested, and determine the question whether the municipalities of Mt. Vernon and Pelham may be called upon to pay the plaintiff and the defendants (for they severally suggest that they are entitled to compensation) for their services in the work which has been accomplished.

Article 5 of chapter 568 of the Laws of 1890, known as the "High-way Law," provides a scheme for building, rebuilding, and repairing bridges, and by section 134 it is provided:

"Whenever any two or more towns shall be liable to make or maintain any bridge or bridges, the same shall be built and maintained at the joint expense of such towns, without reference to town lines. The commissioners of highways of all the towns or of one or more of such towns, the others refusing to act, may enter into a joint contract for making and repairing such bridges."

The remainder of the statute provides for enforcing the act through the courts in the event of the commissioners of highways in the several towns refusing or neglecting to act. The spirit of the act appears to be that the commissioners of highways for the several towns interested shall act for their towns, and that they shall, on behalf of their respective towns, enter into a joint contract for the construction of such bridges; each town providing for the payment of its equal portion of the cost of such bridges, without any reference to the question of what portion of any such bridge may be within the jurisdiction of any particular town. The commissioners of highways of the several towns do not constitute a single body, but each town, by mutual agreement, becomes a party to the contract which the statute authorizes; and in the event of results not being reached in this way the statute permits freeholders to interpose for the purpose of compelling action, so that, in so far as the general law is concerned, there is no bridge commission, in the sense of a body created for the purpose of constructing bridges, a majority of whom would be permitted to control the work. Section 19, Statutory Construction Law.

In 1897 the legislature enacted chapter 269 of the Laws of that year, which bears upon its face many evidences of being a local law, generalized in terms for the purpose of avoiding the provisions of section 18 of article 3 of the state constitution (see title and declaration, "Accepted by the city," and the first section), which provides:

"Whenever the highway commissioners having power in the premises under this act shall decide that the public convenience requires a bridge to be constructed over the stream or waters dividing a city from a town or any incorporated village in said town, the same shall be constructed under and according to the provisions of the highway law for the construction of bridges between towns, being article five of chapter nineteen of the General Laws, the common council of the city being the highway commissioners of the said city, and the board of village trustees of any incorporated village in the town being the highway commissioners of said village."

The purpose of this act was clearly to constitute the common council of the city of Mt. Vernon highway commissioners for the construction of bridges over boundary waters, in the same sense that the highway commissioners of towns were authorized to act. Section 1 of this act provides that any land required for the approaches to said bridges, not exceeding 300 feet, may be bought by the commissioners of highways constructing the bridge, and that the cost of the same may be included in the cost of the bridge; and section 3 provides that, if this land cannot be purchased by agreement, it may be taken under condemnation proceedings, and that the expenses of such proceedings shall be included in, and be a part of, the cost of the bridge. These

are the only provisions in the law which provide for compensation to any one, except for the construction of the bridge or bridges; and the provision in section 2 that the land for approaches may be bought "by the commissioners of highways constructing the bridge" is the only one which in any wise suggests that there might be a single body consisting of the highway commissioner of the town of Pelham and of the members of the common council of the city of Mt. Vernon. But when we remember that under the provisions of the statutory construction law, above cited, a majority of such a body is authorized to conduct business, and that under the provisions of the highway law it is contemplated that each town shall share equally in the expense of constructing and maintaining bridges over boundary waters, it is difficult to believe that the legislature contemplated the creation of a body in which the rights of the town of Pelham might be completely ignored, while it was called upon to pay its equal share of the expenses. It seems to us that the statute must be construed to intend that the commissioners of highways in the respective cities or towns would be authorized to take title to the land for the purpose of the construction of the bridges, and that this expenditure should be considered as a part of the cost of constructing the bridge, to be borne equally by the cities or towns interested. This view of the question is supported by the provisions of section 4 of chapter 269 of the Laws of 1897, as amended by chapter 591 of the Laws of 1898, as amended by chapter 232 of the Laws of 1899, which provides that:

"To pay for the said bridges, the city and town shall each have the power to issue bonds, to be known as bridge bonds of the said city and town, respectively, by the officers thereof, and in the manner provided by law for the issue of other bonds of said city and of said town, to an amount necessary to pay their respective proportions of the cost of said bridges, which shall be borne by said city and town in the proportion of their equalized assessed valuation of taxable property, at the time of the final resolution of said city and town, authorizing the construction of the said bridges. * * * The proceeds of the said bonds shall be paid to the proper officer for receiving funds of each municipality, and credited to a fund which shall be known as the bridge fund, and shall only be paid out by warrants, as other funds of said city or town are paid out."

The whole theory of the various acts, it seems to us, is that they contemplate the action of the municipalities, through their highway commissioners, and that there is no authority for employing any one except in the construction of the bridges under contracts, with the exception that each municipality may be authorized to take the title to the real estate necessary for approaches within its jurisdiction, and include the cost in the cost of the bridge. This does not include the power of employing counsel to act for both parties, or a single board made up of one representative of one of the parties and eight or ten representatives of the other party, each representative being entitled to one vote in the determination of all questions. We are therefore of the opinion that the plaintiff, in whatever work he may have done, was acting as counsel for the corporation of Mt. Vernon, and that he is not entitled to any extra compensation. It is the corporation of Mt. Vernon which is interested in the construction of these bridges, and the services were rendered to the corporation,

not to an independent commission. If we are correct in this view, it follows that the members of the common council of Mt. Vernon, who are required by the charter to serve without pay, cannot be compensated for their action in reference to the construction of bridges, nor can the highway commissioner of the town of Pelham receive any more than the sum allowed him by law for his daily services.

This discussion is not to be construed as passing upon the validity of the various amendatory statutes making important changes in the highway law, in so far as the town of Pelham and the city of Mt. Vernon are concerned, but merely as holding that there is no provision of the statutes which would permit of the payment of the plaintiff's claim, or those of the other officers.

Judgment for the defendants on submission of controversy, without costs. All concur.